Lauretta Y. Welch, WY Bar No. 6-4383
Attorney for Plaintiff
Welch Law, P.C.
19 East Pine Street
Post Office Box 653
Pinedale, WY 82941
(307) 367-6706
(800) 420-9168 (facsimile)
lwelch@welchlawwyo.com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2017 MAR 14 AM 11:51

STEPHAN HARRIS, CLERK
CASPER

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF THE STATE OF WYOMING

| | |
|---|---|
| VICKY SEVERUDE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-cv-044-R |
| ) | |
| NEW ALBERTSONS, INC., ) | |
| AB ACQUISITION, LLC. ) | |
| ) | |
| ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

**COMES NOW** the above-named Plaintiff, Vicky Severude, by and through her attorney, Lauretta Y. Welch, of Welch Law, P.C., and for his cause of action states as follows:

### NATURE OF THE ACTION

This is an action under federal law, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, to correct unlawful discriminatory employment practices by Defendant and to make Plaintiff whole. Plaintiff also asserts an additional claim under Wyoming state law.

## JURISDICTION, VENUE AND PARTIES

1. Federal Question and Supplemental Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. This action is authorized and instituted pursuant to the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*

2. This Court has proper pendent jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

3. Pursuant to 28 U.S.C. § 1391 proper venue for this cause of action is the United States District Court for the District of Wyoming. The unlawful employment practices complained of herein occurred within the District of Wyoming.

4. Prior to filing this Complaint:

    a. Charges of employment discrimination on the basis of disability were filed with the State of Wyoming Department of Labor within one hundred and eighty days (180) of the unlawful employment practice, and the Equal Employment Opportunity Commission ("EEOC") within three hundred (300) days of the commission of the unlawful employment practice alleged herein.

    b. The Plaintiff was terminated from employment with Defendants on February 11, 2015. She filed a timely complaint of disability discrimination with the State of Wyoming Department of Labor and the EEOC on February 25, 2015.

    c. Plaintiff received a Notice of Right to Sue from the EEOC regarding the disability discrimination charge on December 19, 2016.

5. This Complaint is being filed within ninety (90) days of receipt of the EEOC's Notice of Right to Sue.

6.      Plaintiff Vicky Severude ("Ms. Severude") is a United States Citizen and resident of Park County, State of Wyoming.

7.      Defendant, New Albertsons, Inc. ("Albertsons"), is an Ohio corporation, doing business in Wyoming. It's principal office is located at 250 East Parkcenter Boulevard, Boise, Idaho.

8.      Defendant AB Acquisition, LLC is a Delaware limited liability company, doing business in Wyoming. It's principal office is located at 250 East Parkcenter Boulevard, Boise, Idaho.

9.      Upon information and belief, AB Acquisition, LLC is the parent company for New Albertsons Inc.

10.     At all times material hereto, Ms. Severude was employed by Defendants at the Albertsons store in Cody, Park County, Wyoming.

11.     At all times material hereto, Defendants' agents and employees were acting within the scope of their employment and with the knowledge and consent of Defendants.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

12.     Defendants are food and drug retailers, operating throughout the United States, including Wyoming.

13.     Vicky Severude was hired as a front end clerk ("cashier") at Defendants' store in Cody, Wyoming on June 5, 2005.

14.     She worked for Defendants as a cashier for nearly ten years, until she was terminated on February 11, 2015.

15.     Ms. Severude was qualified for her position as cashier at the Albertsons store in Cody, Wyoming.

16. Ms. Severude had spinal surgery in 1999 and she suffers from chronic lower back pain and neck pain.

17. Ms. Severude has been diagnosed with several ongoing medical disorders, including sacroiliac joint inflammation and spinal stenosis in the cervical region. The pain she experiences from these conditions never dissipates.

18. Ms. Severude takes medication daily and has regular appointments with her doctor to address treatment for these conditions.

19. Ms. Severude has trouble with the life activities of walking and standing for long periods of time due to her medical disorders and is a disabled person.

20. Ms. Severude is sixty-six (66) years old and her medical conditions will not improve; she can only manage them.

21. Throughout her employment, Ms. Severude discussed her medical conditions with several employees at Defendants' Cody, Wyoming store, including managers.

22. In 2008, a dispute arose between Ms. Severude and Defendants' local management regarding her use of a retractable device called a "pipe" at her check stand.

23. She was using the pipe to sit during breaks between customers.

24. Ms. Severude received a warning notice, which stated that it was against store policy for cashiers to use the pipe.

25. In response, on August 28, 2008, Ms. Severude's counsel sent a letter addressed to Randy Titmus, store director, notifying the company that Ms. Severude was disabled and requesting the accommodation of allowing her to use the pipe between customers.

26. Randy Titmus told Ms. Severude that he received the letter and forwarded it to the corporate office.

27. As a result, Ms. Severude was allowed to use the pipe at her check stand when there were no customers, from 2008 until the store was remodeled in the spring of 2014.

28. Throughout her employment with Defendants, the company provided certain accommodations for Ms. Severude, including (1) allowing her to use the pipe for support when it was available (2) allowing her to split her time between the regular check stand and the self-checkouts when she experienced problems (3) granting her time off for medical leave and (4) allowing her to use a stool, initially.

29. Ms. Severude also has a handicapped placard for her vehicle and she used a handicapped parking space when she parked in Defendants' parking lot for work.

30. Defendants perceived Ms. Severude as a disabled person, as evidenced by these actions taken by management.

31. In 2014, the retractable devices were removed during a store remodel. Thereafter, Ms. Severude brought a stool to her check stand to rest during breaks between customers.

32. Also in 2014, Ms. Severude fell, causing a laceration on her scalp which exacerbated her symptoms.

33. As a result of the head trauma, Ms. Severude experienced increased neck and shoulder pain. She began having extreme difficulty with the pain at work.

34. Throughout the year, working conditions worsened for Ms. Severude, with her supervisors reducing her hours, changing her work times, and treating her with blatant disrespect due to her requests for additional accommodations.

35. In October 2014, Peggy Oram the Service Supervisor and Personnel Coordinator for the Cody store questioned and criticized Ms. Severude for using and stool and for using the handicapped parking space.

5

36. Ms. Oram told Ms. Severude that she did not look handicapped and that handicapped people used wheelchairs.

37. Another employee told Ms. Severude that if she was in so much pain, she should just quit.

38. Defendants have an employee hotline available 24 (twenty-four) hours a day that employees may use to report improper or illegal activities.

39. On October 13, 2014, after her interaction with Ms. Oram, Ms. Severude called Defendants' corporate hotline to complain about the poor treatment and to request that she be allowed to use a stool at her check stand as an accommodation.

40. After the call, Ms. Oram and the other managers were extremely rude to her, causing her to experience increased stress at work.

41. In late December 2014, Ms. Severude again reached out to the corporate office for help, stating that she felt she was being retaliated against because she had complained about discrimination.

42. After Ms. Severude's second call to the employee hotline in December, Defendant demanded that she get another recommendation from her doctor if she wanted to continue to use the stool at her check stand.

43. In January 2015, Randy Titmus removed Ms. Severude's stool from her check stand. When Ms. Severude arrived at work, it had been taken without her knowledge and hidden from her.

44. Ms. Severude and Defendants' local management received the additional requested recommendation that Ms. Severude be allowed to continue to use the stool at the check stand, but before the recommendation was implemented, Ms. Severude was terminated.

45. Ms. Severude was terminated from employment with Defendants on February 11, 2015 by Randy Titmus during a meeting with Randy Titmus and Peggy Oram at the Albertsons store in Cody, Wyoming.

46. Defendants' stated reason for terminating Ms. Severude's employment was insubordination.

47. Defendants claim that management did not intend to terminate Ms. Severude on February 11, 2015, but that they made the decision based on Ms. Severude's insubordinate statements at the meeting; however, other employees were aware of the termination prior to the meeting.

48. Defendants also claim that Ms. Severude was being disciplined for violating the policy against purchasing and consuming beverages behind her check stand, but that policy was not usually enforced.

49. Defendants selectively enforced their purchase policy against Ms. Severude. Other employees violated the same policy regarding beverages at check stands without being disciplined.

50. Defendants also failed to follow its own policy for disciplinary write-ups with Ms. Severude.

51. Defendants claim that Ms. Severude received written warnings regarding consuming beverages at her check stand, but none of the write-ups are signed and Ms. Severude was not notified of their existence until she was terminated.

52. Defendants retaliated against Ms. Severude for engaging in the protected activities of seeking accommodations for her disability and reporting discrimination based on her disability.

53. The stated basis for Ms. Severude's termination was a pretext and her termination was not pursued in good faith.

54. Almost immediately after she was terminated, Ms. Severude filed a timely Complaint with the Wyoming Department of Workforce Services Fair Employment Program and the United States Equal Employment Opportunity Commission claiming discrimination based on her disability.

### COUNT I – VIOLATON OF THE ADA – HOSTILE WORK ENVIRONMENT

55. Plaintiff incorporates herein by this reference the allegations contained in paragraphs 1 through 54 above.

56. Ms. Severude is the aggrieved party in this action and is authorized to sue to enforce her private rights through the ADA.

57. Defendants are businesses operating within the State of Wyoming and "people" within the meaning of the ADA.

58. Upon information and belief, Defendants are engaged in industry affecting commerce, have over five hundred (500) employees throughout the State of Wyoming, and are "employers" within the meaning of the ADA.

59. Ms. Severude is in fact disabled and was regarded as and perceived by Defendants as disabled. She is an individual with a disability, as that term is defined in the ADA.

60. Ms. Severude is an individual with an actual or perceived disability, who, with or without reasonable accommodation, could have performed the essential functions of her job and is a qualified individual with a disability within the meaning of the ADA.

61. Plaintiff's supervisors and co-workers harassed and mistreated her while she was employed at Defendants' store in Cody, Wyoming, subjecting her to a hostile work environment.

62. Plaintiff reported this mistreatment to Defendants' corporate office by calling the employee hotline.

63. Defendants were aware of the allegations, but did nothing to protect Ms. Severude or address the local work environment.

64. After Ms. Severude reported the behavior, it escalated.

65. Defendants' failure to address the behavior of the supervisors at the Cody, Wyoming Albertsons store severely affected Ms. Severude's performance of her job duties.

66. Ms. Severude suffered from humiliation, feelings of isolation, and exacerbated physical and mental symptoms as a result of this behavior.

67. Defendants allowed the behavior to continue and eventually allowed management to terminate Ms. Severude's employment.

68. Defendants' acts and omissions as set forth above are in direct violation of the ADA. Defendants discriminated against Ms. Severude on the basis of her actual or perceived disability by allowing this behavior to continue.

69. As a direct and proximate result of the aforesaid acts and omissions of Defendants, Ms. Severude has suffered loss of earnings and benefits, loss of earning capacity, emotional distress, humiliation, embarrassment, and loss of enjoyment of life all in an amount to be shown at time of trial and for which damage she should be justly compensated.

70. As a direct and proximate result of Defendants' violations, Ms. Severude has been required to obtain the services of an attorney and she is entitled to an award of reasonable attorney's fees and costs and expenses in this action.

71. The acts and omissions of Defendants as set forth above amount to an unlawful and intentional violation of federal laws justifying the award of punitive damages against Defendants in favor of Ms. Severude.

## COUNT II - VIOLATION OF ADA – RETALIATION

72. Plaintiff incorporates herein by this reference the allegations contained in paragraphs 1 through 71 above.

73. Ms. Severude engaged in a protected activity under the ADA when she called Defendants' corporate employee hotline to report discrimination and followed up with Defendants' corporate representatives regarding her report.

74. After Ms. Severude's call to Defendants' employee hotline, Defendants retaliated against her with disrespect, mistreatment and eventual termination.

75. The store manager demanded additional information from Ms. Severude regarding her need for a stool to accommodate her disability after she had already been allowed to sit at her check stand between customers for several years.

76. Additionally, the stool Ms. Severude had been allowed to use to accommodate her disability was removed without her knowledge or authorization. When she arrived at work, it was gone and she was forced to search for it.

77. This was a cruel and unnecessary action that led Ms. Severude to experience humiliation and stress at work.

78. Randy Titmus did receive the doctor's note stating that Ms. Severude did, in fact need accommodation, but he fired her instead.

79. Defendants took adverse action against Ms. Severude for disclosing her disabilities and demanding that her requests for accommodation be met.

80. The stated basis for Ms. Severude's termination was a pretext and her termination was not pursued in good faith.

81. Defendants' acts and omissions as set forth above are in direct violation of the ADA. Defendant discriminated against Ms. Severude on the basis of her actual or perceived disability by, among other things, terminating her employment for retaliatory reasons.

82. As a direct and proximate result of the aforesaid acts and omissions of Defendants, Ms. Severude has suffered loss of earnings and benefits, loss of earning capacity, emotional distress, humiliation, embarrassment, and loss of enjoyment of life all in an amount to be shown according to proof at time of trial and for which damage she should be justly compensated.

83. As a direct and proximate result of Defendants' violations Ms. Severude has been required to obtain the services of an attorney and she is entitled to an award of reasonable attorney's fees and costs and expenses in this action.

84. The acts and omissions of Defendants as set forth above amount to an unlawful and intentional violation of federal laws justifying the award of punitive damages against Defendants in favor of Ms. Severude.

### COUNT III - VIOLATION OF ADA – FAILURE TO ACCOMODATE

85. Plaintiff incorporates herein by this reference the allegations contained in paragraphs 1 through 84 above.

86. Defendants failed to accommodate Ms. Severude despite multiple requests for accommodation.

87. From the time of disclosure, Ms. Severude was marginalized and questioned about her disability.

88. Defendants acknowledged Ms. Severude's disability and allowed her to use a pipe for several years.

89. When the pipes were removed and Ms. Severude was requesting additional assistance in 2014, however, Defendants refused.

90. Ms. Severude was unable to handle the physical demands of standing all day at her check stand without breaks.

91. Defendants failed to consider reasonable and appropriate accommodation that would allow her to continue to perform her job duties.

92. Defendants' acts and omissions as set forth above are in direct violation of the ADA. Defendants discriminated against Ms. Severude based on her actual or perceived disability by, among other things, terminating her employment for discriminatory.

93. As a direct and proximate result of the aforesaid acts and omissions of Defendants, Ms. Severude has suffered loss of earnings and benefits, loss of earning capacity, emotional distress, humiliation, embarrassment, and loss of enjoyment of life all in an amount to be shown according to proof at time of trial and for which damage she should be justly compensated.

94. As a direct and proximate result of Defendants' violations, Ms. Severude has been required to obtain the services of an attorney and he is entitled to an award of reasonable attorney's fees and costs and expenses in this action.

95. The acts and omissions of Defendants as set forth above amount to an unlawful and intentional violation of federal laws justifying the award of punitive damages against Defendant in favor of Ms. Severude.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

96. Plaintiff incorporates herein by this reference the allegations contained in paragraphs 1 through 95 above.

97. Defendants refused to accept the fact that Ms. Severude needed certain accommodations to satisfactorily perform her job duties, despite Ms. Severude's pleas for assistance.

98. Employees at the local store, including management, criticized zed and questioned Ms. Severude regarding her condition.

99. Defendants also made repeated requests for additional information regarding Ms. Severude's condition, even though Defendants had already acknowledged the need for accommodation.

100. Again, the stool Ms. Severude had been allowed to use to accommodate her disability was unnecessarily removed without her knowledge or authorization, forcing Ms. Severude to search for it at work.

101. Soon thereafter, Ms. Severude was terminated from employment.

102. Defendants' conduct was extreme and outrageous and goes far beyond a standard termination from employment.

103. As a direct and proximate result of the aforesaid acts and omissions of Defendants, Ms. Severude has suffered loss of earnings and benefits, loss of earning capacity, emotional distress, humiliation, embarrassment, and loss of enjoyment of life all in an amount to be shown according to proof at time of trial and for which damage she should be justly compensated.

104. As a direct and proximate result of Defendants' violations Ms. Severude has been required to obtain the services of an attorney and she is entitled to an award of reasonable attorney's fees and costs and expenses in this action.

105. The acts and omissions of Defendants as set forth above amount to an unlawful and intentional violation of Wyoming state law, justifying the award of punitive damages against Defendants in favor of Ms. Severude.

WHEREFORE, Plaintiff prays the Court enter judgment in favor of Plaintiff and against Defendants as follows:

1. For actual damages including but not limited to back pay, lost benefits, and lost future earnings and earning capacity, in an amount to be determined at trial of this matter.

2. For compensatory damages including emotional distress and loss of enjoyment of life.

3. For punitive damages.

4. For prejudgment interest.

5. For attorney's fees and costs, including legal expenses and costs, incurred in this action.

6. For such other and further relief as is just and equitable in the premises.

DATED this 13 day of March, 2017.

RESPECTFULLY SUBMITTED,

*Lauretta Y. Welch*

Lauretta Y. Welch, WY Bar No. 6-4383
Attorney for Plaintiff
Welch Law, P.C.
Post Office Box 653
Pinedale, WY 82941
(307) 367-6706
(800) 420-9168 (facsimile)
lwelch@welchlawwyo.com

---

### JURY DEMAND

---

**COMES NOW** the above-named Plaintiff, Vicky Severude, by and through her attorney, Lauretta Y. Welch, of Welch Law, P.C., and hereby demands a trial by jury in this matter.

DATED this 13 day of March, 2017.

RESPECTFULLY SUBMITTED,

*Lauretta Y. Welch*

Lauretta Y. Welch, WY Bar No. 6-4383
Attorney for Plaintiff
Welch Law, P.C.
Post Office Box 653
Pinedale, WY 82941
(307) 367-6706
(800) 420-9168 (facsimile)
lwelch@welchlawwyo.com